UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

SUSAN DELANA,                          )
                                       )
          Plaintiff,                   )
                                       )
     v.                                )        No. 1:19 CV 20 CDP
                                       )
ANDREW SAUL,                           )
Commissioner of Social Security,       )
                                       )
          Defendant.                   )

## MEMORANDUM AND ORDER

Plaintiff Susan Delana brings this action pursuant to 42 U.S.C. § 405(g)

seeking judicial review of the Commissioner's decision denying her application for

disability insurance benefits (DIB) under Title II of the Social Security Act, 42

U.S.C. §§ 401-434, and supplemental security income (SSI) under Title XVI of the

Act, 42 U.S.C. §§ 1381 et seq.  Sections 205(g)  and 1631(c)(3) of the Act, 42

U.S.C. §§ 405(g) and 1383(c)(3), provide for judicial review of a final decision of

the Commissioner.  Because the Commissioner's final decision is supported by

substantial evidence on the record as a whole, I will affirm the decision of the

Commissioner.

### Procedural History

Plaintiff was born in 1956 and alleged she became disabled beginning April

4, 2016, because of bulging discs, degenerative disc disease, sacroiliitis, an annular

disc tear, bilateral degenerative joint disease, hypertension, hypothyroidism, history of cholecystectomy, hiatal hernia, and diverticulosis.[1]

Plaintiff's application was initially denied on August 24, 2016. After a hearing before an ALJ on December 19, 2017, the ALJ issued a decision denying benefits on April 26, 2018. On December 3, 2018, the Appeals Council denied plaintiff's request for review. The ALJ's decision is thus the final decision of the Commissioner. 42 U.S.C. § 405(g).

In this action for judicial review, plaintiff contends that the ALJ erred in his assessment of her residual functional capacity (RFC) and in his determination of whether she could still perform her past relevant work at step 4 of the analysis. Plaintiff asks that I reverse the Commissioner's final decision and remand the matter for further evaluation. For the reasons that follow, I will affirm the Commissioner's decision.

## Medical Records and Other Evidence Before the ALJ

With respect to the medical records and other evidence of record, I adopt plaintiff's recitation of facts set forth in her Statement of Material Facts (ECF #11-1) as they are admitted by the Commissioner (ECF #16-1). I also adopt the

---

[1] Although plaintiff also stated that she was depressed, her treating physician evaluated her mental functioning as normal. (Tr. 406). During the hearing, plaintiff's counsel conceded that her application was "primarily dealing with her physical impairments." (Tr. 41). In his decision, the ALJ accepted the treating physician's opinion that plaintiff had no mental impairments. (Tr. 24). Plaintiff does not challenge this finding on appeal.

additional facts set forth in the Commissioner's Statement of Additional Material Facts (ECF #16-2), as they are admitted by plaintiff (ECF #17-1). Together, these statements provide a fair and accurate description of the relevant record before the Court.

Additional specific facts will be discussed as needed to address the parties' arguments.

## Discussion

A. <u>Legal Standard</u>

To be eligible for disability insurance benefits under the Social Security Act, plaintiff must prove that she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Secretary of Health & Human Servs.,* 955 F.2d 552, 555 (8th Cir. 1992). The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will be declared disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A).

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. *See* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). The Commissioner begins by deciding whether the claimant is engaged in substantial gainful activity. If the claimant is working, disability benefits are denied. Next, the Commissioner decides whether the claimant has a "severe" impairment or combination of impairments, meaning that which significantly limits her ability to do basic work activities. If the claimant's impairment(s) is not severe, then she is not disabled. The Commissioner then determines whether claimant's impairment(s) meets or equals one of the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. If claimant's impairment(s) is equivalent to one of the listed impairments, she is conclusively disabled. At the fourth step, the Commissioner establishes whether the claimant can perform her past relevant work. If so, the claimant is not disabled. Finally, the Commissioner evaluates various factors to determine whether the claimant is capable of performing any other work in the economy. If not, the claimant is declared disabled and becomes entitled to disability benefits.

I must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole. 42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002). Substantial evidence is less than a preponderance but enough that a reasonable

person would find it adequate to support the conclusion. *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001). Determining whether there is substantial evidence requires scrutinizing analysis. *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007).

I must consider evidence that supports the Commissioner's decision as well as any evidence that fairly detracts from the decision. *McNamara v. Astrue*, 590 F.3d 607, 610 (8th Cir. 2010). If, after reviewing the entire record, it is possible to draw two inconsistent positions and the Commissioner has adopted one of those positions, I must affirm the Commissioner's decision. *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012). I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary outcome. *McNamara*, 590 F.3d at 610.

When evaluating evidence of pain or other subjective complaints, the ALJ is never free to ignore the subjective testimony of the claimant, even if it is uncorroborated by objective medical evidence. *Basinger v. Heckler*, 725 F.2d 1166, 1169 (8th Cir. 1984). The ALJ may, however, disbelieve a claimant's subjective complaints when they are inconsistent with the record as a whole. *See e.g., Battles v. Sullivan*, 902 F.2d 657, 660 (8th Cir. 1990). In considering the subjective complaints, the ALJ is required to consider the factors set out by *Polaski v. Heckler*, 739 F.2d 1320 (8th Cir. 1984), which include:

claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; and (5) functional restrictions.

*Id.* at 1322. When an ALJ explicitly finds that the claimant's testimony is not credible and gives good reasons for the findings, the court will usually defer to the ALJ's finding. *Casey v. Astrue*, 503 F.3d 687, 696 (8th Cir. 2007). However, the ALJ retains the responsibility of developing a full and fair record in the non-adversarial administrative proceeding. *Hildebrand v. Barnhart*, 302 F.3d 836, 838 (8th Cir. 2002).

B.    ALJ's Decision

In his written decision, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of April 4, 2016. The ALJ found plaintiff's lumbar degenerative disc disease with a bulging disc, sacroiliitis, and sciatica to be severe impairments, but determined that they did not meet or medically equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 19.) The ALJ found plaintiff to have the RFC to sedentary work with the following limitations:

She can lift and carry up to ten pounds occasionally and lift or carry less than ten pounds frequently, stand and/or walk for two hours out of an eight-hour workday, and sit for six hours out of an eight-hour workday. The claimant would require the use of an assistive device for ambulation, standing and balance, but they would remain at the

workstation on task and the opposite upper extremity could be used to lift and/or carry up to the exertional limitation. The claimant should never climb ladders, ropes and scaffolds, kneel, crouch, and crawl; and can occasionally climb . . . ramps and stairs, balance, and stoop. [2] The claimant should never work at unprotected heights or with moving mechanical parts; and can occasionally work in vibration.

(Tr. 21.) The ALJ relied upon vocational expert testimony to support a conclusion that plaintiff could perform her past relevant work as a medical voucher clerk as it is generally performed. (Tr. 27.) The ALJ therefore found plaintiff not to be disabled. (Tr. 29.)

Plaintiff claims that this decision is not supported by substantial evidence because the ALJ improperly assessed her residual functional capacity (RFC) and erroneously determined that she could still perform her past relevant work.

C.    RFC Assessment

Plaintiff first argues that the ALJ erred when formulating her RFC because the ALJ failed to afford controlling weight to the opinion of her treating physician, Robert L. Robbins, D.O. Dr. Robbins began treating plaintiff in 2015 for hypertension, stress, hypothyroidism, and back and hip pain. On July 25, 2016, Dr. Robbins completed a medical source statement in connection with plaintiff's application for benefits. Dr. Robbins indicated that plaintiff's impairments

_____

[2] The ALJ appears to have made a typographical error here, as he states that claimant can "occasionally climb work in vibration; ramps and stairs, balance and stoop." (Tr. 21.) The Court has therefore omitted the "work in vibration;" phrase from the RFC as it is repeated in the next sentence.

prevented her from standing for six to eight hours and sitting upright for six to eight hours. (Tr. 376.) He indicated that plaintiff would be required to lie down during the day and that she would be able to lift and carry less than five pounds on a regular basis. (Tr. 377.) Dr. Robbins opined that plaintiff's impairments made it difficult for plaintiff to bend, squat, kneel, and turn. (Tr. 378.) He did not believe plaintiff could work. (Tr. 379.)

On September 19, 2016, Dr. Robbins completed another medical source statement-physical in connection with plaintiff's application for benefits. Dr. Robbins indicated that plaintiff could not lift any weight, would need to shift positions at will, required extra breaks during the day, would be off-task for 25 % of the workday, and would miss work four or more days per month. (Tr. 403-04.) Plaintiff contends that Dr. Robbins' opinions precluded her from performing her past relevant work and that the ALJ improperly discounted them in his RFC determination. Plaintiff essentially argues that I should reweigh the evidence considered by the ALJ in his determination of plaintiff's RFC. That is not my role. *Hensley v. Colvin*, 829 F.3d 926, 934 (8th Cir. 2016). As discussed below, the ALJ properly factored into his RFC determination an assessment of plaintiff's credibility and objective medical findings of record, including the diagnostic imaging results and physical examination findings, which do not support plaintiff's claimed limitations. In so doing, he did not substantially err.

RFC is defined as "what [the claimant] can still do" despite his "physical or mental limitations." 20 C.F.R. § 404.1545(a). "When determining whether a claimant can engage in substantial employment, an ALJ must consider the combination of the claimant's mental and physical impairments." *Lauer v. Apfel*, 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of his limitations. *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000) (citing *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The record must include some medical evidence that supports the RFC. *Dykes v. Apfel*, 223 F.3d 865, 867 (8th Cir. 2000). "Where the claimant has the residual functional capacity to do either the specific work previously done or the same type of work as it is generally performed in the national economy, the claimant is found not to be disabled." *Lowe v. Apfel*, 226 F.3d 969, 973 (8th Cir. 2000) (internal citation omitted).

An ALJ is required to explain in his decision the weight given to any opinions from treating sources, non-treating sources, and non-examining sources. *See* 20 C.F.R. § 404.1527(c)(2)(ii). The Regulations require that more weight be given to the opinions of treating physicians than other sources. 20 C.F.R. § 404.1527(c)(2). A treating physician's assessment of the nature and severity of a claimant's impairments should be given controlling weight if the opinion is well

supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with other substantial evidence in the record. *Id.; see also*

*Forehand v. Barnhart*, 364 F.3d 984, 986 (8th Cir. 2004). This is so because a

treating physician has the best opportunity to observe and evaluate a claimant's

condition,

> since these sources are likely to be the medical professionals most
> able to provide a detailed, longitudinal picture of [a claimant's]
> medical impairment(s) and may bring a unique perspective to the
> medical evidence that cannot be obtained from the objective medical
> findings alone or from reports of individual examinations, such as
> consultative examinations or brief hospitalizations.

20 C.F.R. § 404.1527(c)(2).

When a treating physician's opinion is not given controlling weight, the

Commissioner must look to various factors in determining what weight to accord

that and any other medical opinion of record, including the length of the treatment

relationship and the frequency of examination, the nature and extent of the

treatment relationship, whether the physician provides support for her findings,

whether other evidence in the record is consistent with the physician's findings,

and the physician's area of specialty. 20 C.F.R. § 404.1527(c), (e). Inconsistency

with other substantial evidence alone is a sufficient basis upon which an ALJ may

discount a treating physician's opinion. *Goff v. Barnhart*, 421 F.3d 785, 790-91

(8th Cir. 2005). The Commissioner "will always give good reasons in [the] notice

of determination or decision for the weight [given to the] treating source's

opinion." 20 C.F.R. § 404.1527(c)(2).

Here, the ALJ properly formulated plaintiff's RFC only after evaluating her credibility and discussing the relevant evidence, including her testimony, the medical evidence, including Dr. Robbins' opinions, and her daily activities. After consideration of all this evidence, the ALJ concluded that plaintiff retained the capacity to perform sedentary work, with postural and environmental modifications tailored to her credible limitations. In so doing, he did not substantially err.

The ALJ did not disregard the opinions of plaintiff's treating physician. He gave "great weight" to Dr. Robbins' opinion that plaintiff had no mental impairments as consistent with the medical evidence as a whole, a finding that plaintiff does not challenge on appeal. However, the ALJ assigned only "partial weight" to Dr. Robbins' findings with respect to plaintiff's physical limitations as not fully supported by the medical evidence of record. (Tr. 24.) Because the ALJ's reasons for discounting Dr. Robbins' opinions are supported by substantial evidence on the record as a whole, I defer to that determination.

In discounting Dr. Robbins' opinions, the ALJ noted that plaintiff's treatment records did not support the degree of limitation indicated in the medical source statements, a finding which is supported by substantial evidence on the record as a whole. An ALJ may discount a treating physician's opinion where it is

not supported by objective medical evidence. *Winn v. Comm'r, Soc. Sec. Admin.*, 894 F.3d 982, 987 (8th Cir. 2018). Although Dr. Robbins indicated that plaintiff had significant lifting, sitting, and standing limitations, he never documented any strength deficits. (Tr. 331, 337, 340, 343, 392.) On August 25, 2015, prior to plaintiff's onset date, Dr. Robbins' observed plaintiff to have a stiff neck but a normal gait with a full, painless range of motion in all major muscle groups and joints. (Tr. 331.) By April 4, 2016, plaintiff was complaining of lower back pain and was observed to walk with a limp. (Tr. 337.) Examination revealed a decreased range of motion in plaintiff's back and left hip. (Tr. 337.) Dr. Robbins referred plaintiff for an X-ray and MRI of her back and an X-ray of her hips. (Tr. 341.) The X-ray of plaintiff's lumbar spine showed normal alignment and only mild degenerative changes with possible disc calcifications. (Tr. 348.) The MRI of plaintiff's lower spine performed on May 3, 2016, likewise revealed only mild objective findings. (Tr. 321.) That imaging revealed mild disc bulging without neural impingement and no evidence of disc herniation or neural impingement and very mild central spinal canal stenosis. (Tr. 310.)[3] Similarly, the X-ray of plaintiff's hips performed on April 5, 2016, showed only minor degenerative changes in both hip joints, with no fracture or dislocation, no soft tissue

---

[3] Brandon Scott, D.O., plaintiff's treating physician at Cape Spine and Neurosurgery, described these results as "essentially negative." (Tr. 411.)

abnormalities, and no bony destructive lesions. (Tr. 309.) Dr. Robbins never noted that he observed plaintiff needing to shift positions during physical examination indicative of the need to shift positions at will, nor do his treatment notes contain any observations or objective tests results indicating that plaintiff could not sit or stand for more than ten minutes at a time. As for Dr. Robbins' opinions regarding plaintiff's need to be off-task and miss work, the ALJ properly discounted them as inconsistent with the medical evidence given Dr. Robbins' determination that plaintiff suffered no neurological or psychological limitations and that neither he nor any of plaintiff's other medical providers ever documented a worsening in plaintiff's symptoms that would support the need to be absent from work four or more days per month. In fact, Dr. Robbins indicated that plaintiff's pain level in September of 2016 was only 5 out of 10 with medication, a level far below that indicated by plaintiff when she was still working in April of 2016 and rated her pain as 8 out of 10. Impairments which can be controlled by medication or treatment are not considered disabling. *See Medhaug v. Astrue*, 578 F.3d 805, 813 (8th Cir. 2009).

Here, the ALJ did not substantially err in discounting Dr. Robbins' opinions where plaintiff's medical records as a whole showed that she did not have persistent motor, sensory, reflex or strength deficits sufficient to support the extreme limitations suggested by Dr. Robbins. On May 11, 2016, upon

examination at Cape Spine and Neurosurgery, Sarah Oliver, MPAS , PA-C, noted that while plaintiff exhibited some pain behavior and a normal gait with difficulty walking on heels or toes, she had no difficulty with tandem walking, negative straight leg raise tests, 5/5 in all strength tests, and a full range of motion in her low back. (Tr. 320-21.) Ms. Oliver explained to plaintiff that she was not a good candidate for spinal surgery because her MRI was "within normal limits for a woman of her age" and she was referred for an epidural steroid injection. (Tr. 321.) At her follow-up visit with Ms. Oliver on July 14, 2016, plaintiff reported no relief from the injection. Examination revealed a normal gait and reflexes, normal extremities, no edema, and strength tests showed 5/5 for flexion and extension, 5/5 for bilateral plantar/dorsiflexion, and a 4/5 in her left lower extremity. (Tr. 370.) Plaintiff's relatively normal physical examinations and objective test results, despite her complaints of disabling limitations, were properly considered by the ALJ as one factor when formulating her RFC. *See Goff v. Barnhart*, 421 F.3d 785, 793 (8th Cir. 2005) (lack of corroborating medical evidence is one factor to consider when evaluating subjective complaints of pain). The ALJ also properly considered the fact that plaintiff's treatment has been routine and conservative in nature, consisting primarily of two sacroiliac injections and the use of analgesics, as one factor when assessing her RFC. *See Clevenger v. Social Security Administration*, 567 F.3d 971, 976 (8th Cir. 2009).

Moreover, Dr. Robbins failed to support his conclusory opinions with any diagnostic test results or objective medical data.  Instead, he merely checked boxes on a pre-printed form and provided only brief answers to questions regarding plaintiff's limitations.  Dr. Robbins provided no response to the questions asking him to identify the clinical findings and objective signs supporting his opinions. (Tr. 379, 402.)  The ALJ may properly discount a treating physician's medical source statement where the doctor fails to provide any diagnostic test results or other support for perfunctory answers regarding a claimant's limitations.  *See Thomas v. Berryhill*, 881 F.3d 672, 675 (8th Cir. 2018) (affirming an ALJ's decision to discount a treating physician's assessment as of "little evidentiary value" because it consisted "of nothing more than vague, conclusory statements – checked boxes, circled answers, and brief fill-in-the-blank responses" which cited "no medical evidence and provide[d] little to no elaboration").  For these reasons, the ALJ did not substantially err when he assigned Dr. Robbins' opinions regarding plaintiff's physical limitations only partial weight as inconsistent with other substantial evidence of record.  *See*, *Julin v. Colvin*, 826 F.3d 1082, 1088 (8th Cir. 2016) (opinions of treating physicians may be given limited weight if they are inconsistent with the record) (citing *Papesh v. Colvin*, 786 F.3d 1126, 1132 (8th Cir. 2015)); *Cline v. Colvin*, 771 F.3d 1098, 1103 (8th Cir. 2014) (ALJ gave little weight to treating physician's opinion that was inconsistent with treatment

records and objective medical evidence, and not supported by physician's own exams and test results).[4]

In formulating plaintiff's RFC, the ALJ afforded significant weight to the opinion of non-examining physician Susan Rosamond, M.D. After reviewing plaintiff's medical records, including the MRI and X-rays and Dr. Robbins' July 2016 opinion, Dr. Rosamond concluded that plaintiff could lift 10 pounds frequently, sit for 6 hours, stand or walk for two hours, and that she could occasionally perform postural activities and be exposed to hazards. (Tr. 79.) An ALJ may afford significant weight to the opinion of a non-examining physician where it is consistent with the evidence as a whole. *Twyford v. Comm'r, Soc. Sec. Admin.*, 929 F.3d 512, 518 (8th Cir. 2019). Here, the ALJ determined that Dr. Rosamund's opinions regarding plaintiff's limitations were consistent with the mild objective test results, plaintiff's longitudinal medical history, and her daily activities. (Tr. 25.) The ALJ credited Dr. Rosamond's opinion regarding plaintiff's physical limitations over Dr. Robbins' opinions because her opinion contained a comprehensive narrative detailing the medical evidence she relied upon to formulate her opinion and it was consistent with the medical evidence submitted by plaintiff after she rendered her opinion. (Tr. 25.) Consistent with Dr.

---

[4] Nor did the ALJ err in disregarding Dr. Robbins' opinion that plaintiff could not work, as it "strayed beyond medical issues to a legal opinion on the application of the social security statute." *Julin*, 826 F.3d at 1089.

Rosamond's opinion, the ALJ found that plaintiff could lift 10 pounds occasionally, sit for six hours, stand and walk for two hours, occasionally balance, stoop, and climb ramps and stairs, and avoid hazards. (Tr. 79-80.) However, the ALJ also partially credited Dr. Robbins' opinions and incorporated his more restrictive recommendations regarding plaintiff's inability to climb ladders, ropes, and scaffolds into the RFC. The ALJ also credited Dr. Robbins' opinion that plaintiff needed to use a cane and could only occasionally work in vibration. Under these circumstances, the ALJ did not substantially err in assigning less weight to those portions of Dr. Robbins' opinion which were consistent with the record as a whole, nor did he err in accepting the opinion of Dr. Rosamond as consistent with the objective medical evidence. It is the duty of the ALJ to weigh conflicting evidence and to resolve disagreements among medical opinions. *Cline*, 771 F.3d at 1103. Here, the ALJ did not substantially err when he assigned lesser weight to Dr. Robbins' opinions with regarding to plaintiff's physical limitations.

The ALJ also properly considered plaintiff's daily activities and assessed plaintiff's RFC consistent with her credible limitations. "The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts." *Pearsall*, 274 F.3d at 1218. I must defer to the ALJ's credibility determinations "so long as such determinations are supported by good reasons and substantial evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005). When

determining the credibility of a claimant's subjective complaints, the ALJ must consider all evidence relating to the complaints, including the claimant's prior work record and third party observations as to the claimant's daily activities; the duration, frequency and intensity of the symptoms; any precipitating and aggravating factors; the dosage, effectiveness and side effects of medication; and any functional restrictions. *Halverson v. Astrue*, 600 F.3d 922, 931 (8th Cir. 2010); *Polaski,* 739 F.2d at 1322. While an ALJ need not explicitly discuss each *Polaski* factor in his decision, he nevertheless must acknowledge and consider these factors before discounting a claimant's subjective complaints. *Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). "[T]he duty of the court is to ascertain whether the ALJ considered all of the evidence relevant to the plaintiff's complaints . . . under the *Polaski* standards and whether the evidence so contradicts the plaintiff's subjective complaints that the ALJ could discount his or her testimony as not credible." *Masterson v. Barnhart*, 363 F.3d 731, 738–39 (8th Cir. 2004). It is not enough that the record merely contain inconsistencies. Instead, the ALJ must specifically demonstrate in his decision that he considered all of the evidence. *Id.* at 738; *see also Cline v. Sullivan*, 939 F.2d 560, 565 (8th Cir. 1991). Where an ALJ explicitly considers the *Polaski* factors but then discredits a claimant's complaints for good reason, the decision should be upheld. *Hogan v. Apfel*, 239 F.3d 958, 962 (8th Cir. 2001).

Here, the ALJ properly evaluated plaintiff's credibility based upon her own testimony, the objective medical evidence of record, her daily activities, and the conservative nature of her treatment. The ALJ summarized plaintiff's testimony regarding her daily activities and subjective allegations of pain. The ALJ was not required to fully credit all of plaintiff's assertions regarding her limitations given her activities, which included performing light routine household chores such as cooking, dusting, washing clothes, doing the dishes, driving independently, grocery shopping, and going to church. *Johnson v. Chater*, 87 F.3d 1015, 1017 (8th Cir. 1996). "Acts such as cooking, vacuuming, washing dishes, doing laundry, shopping, driving, and walking, are inconsistent with subjective complaints of disabling pain." *Medhaug*, 578 F.3d at 817. The ALJ also discounted plaintiff's credibility after noting that she continued to work after her alleged onset date. "Acts which are inconsistent with a claimant's assertion of disability reflect negatively upon that claimant's credibility." *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001).

Even if the ALJ could have drawn a different conclusion about plaintiff's credibility after reviewing her daily activities, I may not reverse the Commissioner's decision merely because substantial evidence could also support a contrary determination. *McNamara*, 590 F.3d at 610. Here, the ALJ discounted plaintiff's subjective complaints only after evaluating the entirety of the record.

Where, as here, an ALJ seriously considers but for good reasons explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson*, 240 F.3d at 1147. The ALJ evaluated all of the medical evidence of record and adequately explained his reasons for the weight given this evidence. Substantial evidence in the record as a whole supports the ALJ's RFC determination, so I will affirm the decision of the Commissioner as within a "reasonable zone of choice." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (citing *Owen v. Astrue*, 551 F.3d 792, 798 (8th Cir. 2008)).

D.     Past Relevant Work

After determining plaintiff's RFC, the ALJ proceeded to determine whether plaintiff could perform her past relevant work as a medical voucher clerk, classified as sedentary work by the Dictionary of Occupational Titles (DOT number 214.482-018). The regulations define sedentary work as "involving lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although sitting is involved, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met . . . [A]t the sedentary level of exertion, periods of standing or walking should generally total no more than about 2 hours of an 8-hour workday, and sitting should generally total approximately 6 hours of an 8-hour workday."

*See Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert &
Vocational Specialist Evidence, & Other Reliable Occupational Information in
Disability Decisions*, SSR 00–4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000).

At step 4, the ALJ has a duty to make "explicit findings" as to the demands
of a claimant's past work and to compare those findings to the RFC. *Lowe v.
Apfel*, 226 F.3d 969, 972 (8th Cir. 2000). Here, the ALJ relied upon the testimony
of a vocational expert to conclude that plaintiff could perform her past relevant
work as a medical voucher clerk as it is generally performed, but not as it was
actually performed by the claimant. (Tr. 28). The ALJ posed the following
hypothetical to the VE:

> Q: Please assume a hypothetical individual the claimant's age and education,
> and with the past jobs that you've described. Further, assume this
> individual's limited to a range of sedentary work, in that the individual could
> lift and carry up to 10 pounds occasionally, and lift or carry less than 10
> pounds frequently, could stand or walk for two hours of an eight-hour
> workday, and sit for six hours of an eight-hour workday. They would
> require the use of an assisting device for ambulation. Standing, and balance,
> but they would remain at the workstation, on-task and the opposite upper
> extremity can be used to lift and or carry up to the exertional limitation.
> They should never climb ladders, ropes, and scaffolds, kneel, crouch, and
> crawl, and they can occasionally climb ramps and stairs, balance, and stoop.
> They should never work at unprotected heights, or with moving mechanical
> parts, and can occasionally work in vibration. Could this hypothetical
> individual perform any of their past jobs?
>
> A: Well . . . If we base this solely on the DOT sedentary physical demand
> level, the definition of that, then the person would be able to perform
> Medical Voucher Clerk . . . .

Q: Okay. So your testimony would be that, [she] could perform the past work as a Medical Voucher Clerk as generally performed in the DOT, but not as actually performed by the claimant.

A: That is correct.

(Tr. 60-61.) The ALJ accepted the testimony of the VE and found that there was no conflict between this testimony and the job description of a medical voucher clerk contained within DOT number 214.482-018. (Tr. 29.) In so doing, the ALJ acknowledged that the VE testified regarding other hypothetical individuals with varying degrees of limitations, but concluded that those hypotheticals were not relevant to his determination because they included greater limitations than those found credible as supported by the medical records as a whole. (Tr. 29.)

Plaintiff argues that there is a conflict or an ambiguity in the record concerning the VE's testimony and her ability to perform her past relevant work which requires remand. In support of this argument, plaintiff points to the VE's statement (made after the ALJ posed the hypothetical upon which he later relied) that in "her professional opinion" a medical voucher clerk would be sitting for seven hours instead of six. (Tr. 65.) Plaintiff then argues that she cannot perform her past relevant work as a medical voucher clerk because the ALJ determined that she retained the residual functional capacity to sit for only six, not seven, hours. Given her age, plaintiff argues that the Medical-Vocational Guidelines would have

dictated a finding of disabled if the ALJ had properly determined that she was unable to perform her past relevant work.

In finding plaintiff was not disabled, the ALJ properly relied upon the DOT's classification of medical voucher clerk and the VE's testimony that a person with plaintiff's credible limitations could perform this past relevant work as generally performed. If an individual can perform her past relevant work, either as she performed it *or* as the work is generally performed in the national economy, she is not disabled. *Wagner v. Astrue*, 499 F.3d 842, 853 (8th Cir. 2007). The ALJ may seek the opinion of a vocational expert regarding the jobs the claimant can perform. 20 C.F.R. § 404.1566(e); *Pearsall*, 274 F.3d at 1219. The vocational expert will be asked to respond to a hypothetical question, posed by the ALJ, which precisely sets out the claimant's credible impairments. *Young v. Apfel*, 221 F.3d 1065, 1069 (8th Cir. 2000). Here, the ALJ's hypothetical to the VE properly included only those limitations which were credibly supported by the record, and the VE's resulting opinion that someone with plaintiff's limitations could perform plaintiff's past relevant work as a medical voucher clerk as that job is defined in DOT 214.482-018 constitutes substantial evidence upon which the ALJ was entitled to rely. *See Haynes v. Shalala*, 26 F.3d 812, 815 (8th Cir. 1994). The ALJ was not required to consider those hypotheticals posed to the VE which did not encompass plaintiff's credible limitations.

Plaintiff's primary complaint is that the ALJ relied upon the DOT classification of medical voucher clerk which, as sedentary work, is defined to include six hours of sitting, rather than the VE's later comment that the position of medical voucher clerk actually requires seven, not six, hours of sitting. A vocational expert's testimony should generally be consistent with the DOT. *See Policy Interpretation Ruling: Titles II & XVI: Use of Vocational Expert & Vocational Specialist Evidence, & Other Reliable Occupational Information in Disability Decisions*, SSR 00–4P, 2000 WL 1898704 (S.S.A. Dec. 4, 2000). "When VE testimony conflicts with the DOT, the DOT controls when the DOT classifications are not rebutted." *Jones v. Astrue*, 619 F.3d 963, 978 (8th Cir. 2010) (internal quotation marks and citation omitted). Here, the ALJ did not substantially err by relying upon the DOT classification of plaintiff's past relevant work as controlling, particularly because it was supported by the VE's consistent testimony that someone with plaintiff's credible limitations could perform the job as specifically described in the DOT classification. While an ALJ may have a duty resolve conflicts between VE evidence and the DOT, this duty only applies if the ALJ relies upon that inconsistent VE evidence to support a determination the claimant is not disabled. *Kemp v. Colvin*, 743 F.3d 630, 633 (8th Cir. 2014); Social Security Regulation 00–4p ("When vocational evidence provided by a VE . . . is not consistent with information in the DOT, the adjudicator must resolve this

conflict before relying on the VE . . . evidence to support a determination or decision that the individual is or is not disabled.").  Because the ALJ did not rely upon any inconsistent VE evidence in his decision, any failure to specifically address potentially inconsistent evidence amounts to, at most, "an arguable deficiency in opinion-writing technique [which] does not require [the Court] to set aside an administrative finding when that deficiency had no bearing on the outcome."  *Hepp v. Astrue*, 511 F.3d 798, 806 (8th Cir. 2008) (internal quotation marks and citation omitted).  Here, the ALJ properly relied upon the DOT classification and VE testimony consistent with the same to determine that plaintiff retained the RFC to perform her past relevant work as a medical voucher clerk as that work is generally performed, and in doing so he did not substantially err.  Because plaintiff could perform her past relevant work as a medical voucher clerk as it is generally performed, the ALJ properly determined that plaintiff was not disabled.

### Conclusion

When reviewing an adverse decision by the Commissioner, the Court's task is to determine whether the decision is supported by substantial evidence on the record as a whole.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001).  "Substantial evidence is defined to include such relevant evidence as a reasonable mind would find adequate to support the Commissioner's conclusion."  *Id.*  Where substantial

evidence supports the Commissioner's decision, this Court may not reverse the decision merely because substantial evidence exists in the record that would have supported a contrary outcome or because another court could have decided the case differently. *Id.*; *see also Igo v. Colvin*, 839 F.3d 724, 728 (8th Cir. 2016); *Buckner v. Astrue,* 646 F.3d 549, 556 (8th Cir. 2011).

For the reasons set out above, a reasonable mind can find the evidence of record sufficient to support the ALJ's determination that plaintiff was not disabled. Because substantial evidence on the record as a whole supports the ALJ's decision, it must be affirmed. *Davis,* 239 F.3d at 966.

Accordingly,

**IT IS HEREBY ORDERED** that that the decision of the Commissioner is affirmed, and Susan Delana's complaint is dismissed with prejudice.

A separate Judgment is entered herewith.


_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE


Dated this 15th day of January, 2020.